J. S07034/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RENE FIGUEROA, | : | No. 1355 EDA 2017 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, January 23, 2015,
in the Court of Common Pleas of Northampton County
Criminal Division at No. CP-48-CR-0000620-2013

BEFORE:  BENDER, P.J.E., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED AUGUST 03, 2018**

Appellant, Rene Figueroa, appeals from the judgment of sentence entered by the Court of Common Pleas of Northampton County on January 23, 2015.  After careful review, we affirm.

The trial court provided the following recitation of the facts of this case:

> On the night of December 1, 2012, [appellant] and [Javier Rivera-Alvarado ("Rivera-Alvarado")] were at the Puerto Rican Beneficial Society Club ("Puerto Rican Club"), a social club located on East Third Street in Bethlehem, Northampton County, Pennsylvania.  [Appellant] was at the Puerto Rican Club to watch a boxing match, as were the following individuals: Yolanda Morales, [Rivera-Alvarado], Orialis and Angel Figueroa ("Orialis" and "Angel"),[Footnote 7] and Luis Rivera ("Rivera").  Orialis, Angel, and Rivera were the alleged victims of [appellant] and [Rivera-Alvarado] and are members of the same family.  Ms. Morales

was a friend of the alleged victims' family. On the night in question, a shootout between [appellant] and Orialis occurred at approximately 2:30 a.m. on the street outside the Puerto Rican Club, resulting in the death of Ms. Morales and gunshot wounds to [appellant], [Rivera-Alvarado], Orialis, Angel, and Rivera. After the shootout, the injured individuals were transported to the emergency trauma center at St. Luke's Hospital. There, Detective Martinez conducted interviews with a number of the involved individuals.

> [Footnote 7] Orialis Figueroa and Angel Figueroa are brothers with no relation to [appellant]. . . .

Trial court opinion, 5/26/15 at 4-5.

The trial court also provided the following procedural history:

[Appellant] has appealed to the Superior Court from the judgment of sentence imposed on January 23, 2015. Following a jury trial held from September 29, 2014, to October 31, 2014, [appellant] was convicted of involuntary manslaughter as a misdemeanor of the first degree,[Footnote 1] aggravated assault as a felony of the first degree,[Footnote 2] firearms not to be carried without a license as a felony of the third degree,[Footnote 3] and receiving stolen property as a felony of the second degree.[Footnote 4]

> [Footnote 1] 18 Pa.C.S.A. § 2504.

> [Footnote 2] [18 Pa.C.S.A.] § 2702(a)(1).

> [Footnote 3] [18 Pa.C.S.A.] § 6106(a)(1).

> [Footnote 4] [18 Pa.C.S.A.] §§ 3903(a)(2), 3925.

On January 23, 2015, [appellant] was sentenced to thirty to sixty months in state prison for involuntary manslaughter, a consecutive period of 108 to

216 months in state prison for aggravated assault, a consecutive period of forty-two to eighty-four months in state prison for firearms not to be carried without a license, and a concurrent period of thirty to sixty months in state prison for receiving stolen property. In the aggregate, [appellant] was sentenced to 180 to 360 months in state prison, or fifteen to thirty years.

On February 9, 2015, [appellant] filed a Notice of Appeal.[Footnote 5] However, on September 16, 2015, the Superior Court, at docket number 421 EDA 2015, dismissed [appellant's] appeal because his attorney failed to file an appellate brief. Subsequently, [appellant] sought the restoration of his appellate rights by way of a petition for post-conviction collateral relief, which the [trial] court granted in an Order filed on January 13, 2017. The instant appeal followed.

> [Footnote 5] [Appellant] did not file an optional post-sentence motion pursuant to Pennsylvania Rule of Criminal Procedure 720.

On March 30, 2017, [appellant], through new counsel, filed a "Concise Statement of Errors Complained of on Appeal Pursuant to Rule of Appellate Procedure 1925(b)" ("Concise Statement")[.]

Trial court opinion, 4/25/17 at 1-2.

Appellant raises the following issues for our review:

1. Whether a mistrial occurred on October 23, 2014 when Detective Fabian Martinez was questioned by the prosecution about a co-defendant's statements suggesting that appellant was handed a gun by a bouncer shortly before the shootout. [Notes of testimony, 10/23/2014, at 140:24 – 141:21] [This was after the court read a cautionary instruction to the jury as follows: "Let me tell

you that any statement that co-[defendant] made can only be used against co-[defendant]. So with regard to any statements that the detective relays to you that were made by co-defendant, you cannot consider them against appellant."]  [N.T., 10/23/2014, 139:4-11]?

2. Whether a fatal ***Bruton***[1] violation occurred where Detective Fabian Martinez used appellant's name while testifying to co-[defendant's] statement and failed to move for mistrial.  [N.T., 10/23/2014, at 141:1 – 147:2]  [***See*** opinion of trial court dated May 26, 2015, page 13.]?

3. Whether the Commonwealth committed prosecutorial misconduct during the improper closing remarks that resulted in prejudice to . . . appellant that could not be cured, and therefore, warranted a mistrial  [statements excluded at trial during closing N.T. October 30, 2014 at 263:11 – 263:21 and properly raised by counsel N.T. October 30, 2014, at 271:23 – 284:10]?

4. Whether the trial court erred in denying a motion for judgment of acquittal due to the sufficiency of the evidence where the Commonwealth did not prove the necessary element of malice, the ***mens rea*** to sustain a conviction of aggravated assault?

5. Whether the verdict was against the weight of the evidence where the Commonwealth's own evidence at trial established a justifiable defense of others by self-defense, and therefore, did not prove its case beyond a reasonable doubt?

---

[1] ***Bruton v. United States***, 391 U.S. 123 (1968).

> 6.    Whether the crime of involuntary manslaughter and aggravated assault merge for purposes of sentencing.  [**See** Title 42 Pa.C.S.A. § 9765]?
>
> 7.    Whether the trial court erred in sentencing . . . appellant pursuant to the deadly weapon enhancement possessed matrix at 204 Pa. Code § 303.17(A) where the jury failed to specifically conclude that . . . appellant used a deadly weapon in the course of the commission of a crime.  **Alleyne v. United States**?

Appellant's brief at 4-5 (full capitalization omitted, bracketed material appears in original, emphasis supplied).

Before we can begin to address appellant's issues, we must first reach a decision on an issue the Commonwealth raised in its brief.  The Commonwealth contends that appellant's entire appeal should be quashed for failure to timely file his notice of appeal to this court.  (**See** Commonwealth's brief at 7.)

As noted by the trial court, appellant was sentenced on January 23, 2015, and did not file post-sentence motions, electing to file a direct appeal with this court on February 9, 2015.  We dismissed appellant's appeal at No. 421 EDA 2015 on September 16, 2015 after appellant failed to file an appellate brief.  In response to a petition filed pursuant to the Post Conviction Relief Act[2] (hereinafter, "PCRA"), the trial court reinstated appellant's direct appeal rights **nunc pro tunc** on January 13, 2017, and ordered appellant to file a direct appeal to this court within 30 days.  On

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

February 17, 2017, four days after appellant's time to file an appeal *nunc pro tunc* expired,[3] appellant filed a motion with the trial court seeking a second restoration of his right to a direct appeal *nunc pro tunc*, claiming that appellant's counsel misplaced the trial court's January 13, 2017 order. The Commonwealth did not object to appellant's direct appeal rights being reinstated *nunc pro tunc*. The trial court granted appellant's motion on February 17, 2017, and appellant filed notice of the instant appeal on March 6, 2017.

The Commonwealth contends that appellant's appeal should be quashed on jurisdictional grounds. Specifically, the Commonwealth relies on then-Judge (now Justice) Mundy's (hereinafter, "Judge Mundy") dissent in *Commonwealth v. Leatherby*, 116 A.3d 73 (Pa.Super. 2015). In her dissent, Judge Mundy stated that we "have held that a trial court may not *sua sponte* reinstate a defendant's [] direct appeal rights *nunc pro tunc* in the absence of a PCRA petition being filed before the court." *Id.* at 87 n.4, citing *Commonwealth v. Turner*, 73 A.3d 1283, 1285 n.2 (Pa.Super. 2013), *appeal denied*, 91 A.3d 162 (Pa. 2014).

The case at bar, however, does not involve a trial court improperly reinstating appellant's direct appeal rights *nunc pro tunc sua sponte*. Rather, appellant filed a motion with the trial court entitled "Motion to Allow

---

[3] February 12, 2017, fell on a Sunday. Accordingly, appellant's deadline to file an appeal *nunc pro tunc* was extended to the following business day, February 13, 2017. *See* 1 Pa.C.S.A. § 1908.

Appeal to the Superior Court **Nunc Pro Tunc**." In **Turner**, the defendant filed a "Petition to File Superior Court Appeal **Nunc Pro Tunc**" after his time for filing a direct appeal had expired. **Id.** at 1285. We determined that it appeared that the trial court in **Turner** treated the defendant's petition as a timely first petition filed pursuant to the PCRA, and that the trial court properly reinstated the defendant's direct appeal rights. **Id.** at 1286. Accordingly, similar to the **Turner** court, we find that the trial court appears to have treated appellant's February 17, 2017 motion as a petition filed pursuant to the PCRA and properly reinstated appellant's direct appeal rights. Therefore, the instant appeal before us was timely filed, and we have jurisdiction to consider the appeal on its merits.[4]

---

[4] In candor, this writer has concerns with the timeliness holding in **Turner**. In **Turner**, upon the filing of a timely PCRA petition, the court granted a direct appeal **nunc pro tunc** to be filed within 30 days of July 26, 2011. However, no appeal was thereafter filed, and the court **sua sponte** reinstated direct appeal rights **nunc pro tunc** a second time on August 29, 2011. Again, no appeal was filed; and on April 18, 2012, appellant, through new counsel, filed a petition to appeal **nunc pro tunc**, which the court once again granted. Thereafter, appellant filed the appeal. The **Turner** court reasoned that once the original **nunc pro tunc** relief was granted, appellant had one year to file the appeal relying on **Commonwealth v. Karanicolas**, 836 A.2d 940, 944 (Pa.Super. 2003), and **Commonwealth v. Lewis**, 718 A.2d 1262 (Pa.Super. 1998), **appeal denied**, 737 A.2d 1224 (Pa. 1999). My concern is that in both **Karanicolas** and **Lewis**, there were **nunc pro tunc** direct appeals properly filed within 30 days of the courts' orders. Following the decision by this court on the direct appeals, a subsequent PCRA petition was treated as a first petition. It would seem that to reset the finality of the judgment of sentence, there must be a direct appeal **nunc pro tunc** filed. Here, as in **Turner**, appellant failed to timely comply with the initial **nunc pro tunc** grant, and then sought an additional petition to request that the rights be reinstated a second time. I believe the Commonwealth makes a strong argument that the subsequent petition

**I. and II.**

In his first two issues on appeal, appellant argues that the trial court erred in not granting appellant's motion for a mistrial resulting from Detective Fabian Martinez's trial testimony. (Appellant's brief at 14-21.) The Commonwealth contends that appellant failed to move for a mistrial at the time of the testimony in question, thereby waiving the issues on appeal. (Commonwealth's brief at 12.)

The Pennsylvania Rules of Criminal Procedure mandate that, "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion **shall** be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(B) (emphasis added).

Here, appellant argues that the trial court should have declared a mistrial after Detective Martinez improperly used appellant's name when testifying about co-defendant Javier Rivera-Alvarado's[5] statements given in the intensive care unit at St. Luke's Hospital. (Appellant's brief at 14-16.) Appellant specifically cites to the following testimony from the Commonwealth's direct examination of Detective Martinez for his contention that the trial court erred in refusing to grant a mistrial:

---

should be treated as an untimely PCRA. However, as a panel of this court, we are bound by the decision in **Turner**.

[5] Mr. Rivera-Alvarado is not a party to this appeal.

> Q:      Did [Mr. Rivera-Alvarado] say anything occurred as he was leaving the club with his wife?
>
> A:      Well, after he made a statement, he was again advised that we were trying to figure out what happened, we needed to know everything he saw.
>
>         He did state that, on his way out, one of the bouncers had come out of a back room and show [appellant] --
>
> Q:      That wasn't -- that wasn't --
>
> A:      I apologize.
>
> THE COURT:   Disregard that statement, ladies and gentlemen.
>
> MR. MCMAHON:  Judge, I want -- I reserve.

Notes of testimony, 10/23/15 at 140-141.

In his brief, appellant argues that his counsel's statement, "Judge, I want -- I reserve," is tantamount to a motion for a mistrial. This argument is belied by the record. During a conference with the judge shortly after the above testimony took place, appellant's trial counsel stated that he was, "ready to move for a mistrial," which indicates that he had not yet done so. (*See id.* at 145.) Nothing in the record shows that any motion for a mistrial was made. Accordingly, we find that appellant did not adequately preserve these issues for appeal, and the issues are thus waived.

**III.**

In his third issue for our review, appellant avers that the Commonwealth committed prosecutorial misconduct during its closing argument to the jury. Specifically, appellant avers that the trial court erred by not declaring a mistrial. (Appellant's brief at 23.) Rather than further develop an argument, however, appellant stated:

> Each Defense Counsel, the Court, and Commonwealth all went to great lengths to discuss their position with regard to why a mistrial should be granted and the Court's decision to give a curative instruction. The depth of the discussion is simply too voluminous to put in the brief at this point. However, the discussion is incorporated herein by reference as though specifically set forth herein. Strategy of the Defense and strategy of the Commonwealth as well as the Court's thoughts are all incorporated.

*Id.*

Our supreme court has consistently held that "'incorporation by reference' is an unacceptable manner of appellate advocacy for the proper presentation of a claim for relief to [Pennsylvania appellate courts.]" *Commonwealth v. Briggs*, 12 A.3d 291, 342 (Pa. 2011), *cert. denied*, 565 U.S. 889 (2011), citing *Commonwealth v. Edmiston*, 634 A.2d 1078, 1092 n.3 (Pa. 1993). The Pennsylvania Rules of Appellate Procedure further prohibit any party from incorporating arguments from motions presented at trial. *Id.* at 343, citing *Commonwealth v. Lambert*, 797 A.2d 232, 237 n.4 (Pa. 2001).

> The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised. Thus, we reiterate that compliance with these rules by appellate advocates who have any business before [Pennsylvania appellate courts] is mandatory.

*Id.*

Accordingly, we find that appellant has waived this issue on appeal.

**IV.**

In his fourth issue on appeal, appellant contends that the Commonwealth's evidence was insufficient to establish the malice requirement for his aggravated assault conviction. We disagree.

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilty to a mathematical certainty.

> ***Commonwealth v. Coon***, 695 A.2d 794, 797 (Pa.Super. 1997). Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed. ***Commonwealth v. Marks***, 704 A.2d 1095, 1098 (Pa.Super. 1997), citing ***Commonwealth v. Mudrick***, 507 A.2d 1212, 1213 (Pa. 1986).

***Commonwealth v. Stokes***, 78 A.3d 644, 649 (Pa.Super. 2013) (citations omitted).

> Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943-944 (Pa.Super. 2011), ***appeal dismissed as improvidently granted***, 54 A.3d 22 (Pa. 2012).

The credibility and weight of the evidence are both matters that are in the sole purview of the jury. Specifically, when considering whether the evidence was sufficient to prove each element of each charge beyond a reasonable doubt, we cannot assume the task of weighing evidence and making independent conclusions of fact. ***Commonwealth v. Lewis***, 911 A.2d 558, 563 (Pa.Super. 2006) (citations omitted). "Any doubts regarding [an appellant's] guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Id.***

In order to sufficiently prove beyond a reasonable doubt for an aggravated assault conviction that a defendant acted with malice by establishing that while a defendant "did not have an intent to kill, [the defendant] nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." **Commonwealth v. Packer**, 168 A.3d 161, 168 (Pa. 2017) (internal quotation marks and citations omitted).

We agree with the trial court's findings that the Commonwealth introduced,

> sufficient evidence to demonstrate that [appellant] acted with malice. The uncontroverted evidence demonstrated that in the early-morning hours of December 2, 2012, a melee and a gunfight erupted in the street outside of the Puerto Rican . . . Club in the City of Bethlehem. The individuals involved in the melee, many of whom were running back and forth in and out of the club, numbered in the double digits. There were two shooters involved in the gunfight, and [appellant], as he admitted in his closing argument, was undoubtedly one of them. ([Notes of testimony], 10/30/2014 at 109:19-23.) At some point during that gunfight, Angel Figueroa was shot, and the jury concluded that [appellant] shot him. Under these circumstances, [appellant], by shooting a gun in the presence of numerous other people in a darkened city street, certainly "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury . . . [or] could reasonably anticipate [that] death or . . . serious bodily injury would likely and logically result."

Trial court opinion, 4/25/17 at 7, quoting **Commonwealth v. McClendon**, 874 A.2d 1223, 1229 (Pa.Super. 2005).

Accordingly, appellant's fourth issue is without merit.

## V.

Appellant next avers that the verdict was against the weight of the evidence, as the Commonwealth's evidence established appellant's argument of self-defense or defense of others. (***See*** appellant's brief at 25.) Challenges to the weight of the evidence must be raised before the trial court in the form of either a written or an oral motion for a new trial at any time before sentencing or in a post-sentence motion. ***Commonwealth v. Kinney***, 157 A.3d 968, 972 (Pa.Super. 2017), ***appeal denied***, 170 A.3d 971 (Pa. 2017), citing Pa.R.Crim.P. 607.

Appellant contends that because his direct appeal rights were restored ***nunc pro tunc*** by the trial court, that Rule 607's requirement that the issue be preserved for appeal in either a written or an oral motion is "eviscerated." (***See*** appellant's brief at 26.) Appellant does not point to any authority that permits him to bypass the requirements of Rule 607 simply because his direct appeal rights were restored ***nunc pro tunc***. To the contrary, restoration of direct appeal rights does not automatically preserve any and all issues that may be raised on appeal. Accordingly, we find that appellant's weight of the evidence issue is waived on appeal.

## VI.

For his sixth issue on appeal, appellant averred that the trial court erred by not merging his sentences for aggravated assault and involuntary

manslaughter. In his brief, appellant concedes that because the two sentences related to two different victims, the sentences would not merge. (**See** appellant's brief at 28; trial court opinion, 4/25/17 at 8.)

## VII.

In his seventh and final issue on appeal, appellant contends that the trial court sentenced appellant using the deadly weapons enhancement pursuant to 204 Pa. Code § 303.17(B), and that the deadly weapons enhancement is unconstitutional in light of the Supreme Court of the United States' decision in **Alleyne v. United States**, 570 U.S. 99 (2013).

Specifically, appellant is challenging the legality of his sentence, by claiming that the deadly weapons used enhancement is unconstitutional pursuant to **Alleyne**, as it required the trial court to determine whether appellant used a deadly weapon in the commission of the crimes for which he was convicted. (Appellant's brief at 29.) Appellant, however, offers little more than a bald statement that the sentence is illegal because the trial court relied on the definition of "firearm" contained in 42 Pa.C.S.A. § 9712. Section 9712 was found to be unconstitutional by this court in **Commonwealth v. Valentine**, 101 A.3d 801, 812 (Pa.Super. 2014), **appeal denied**, 124 A.3d 309 (Pa. 2015), as a result of the United States Supreme Court's holding in **Alleyne** and our holding in **Commonwealth v. Newman**, 99 A.3d 86 (Pa.Super. 2014) (**en banc**).

This argument completely misses the mark.

> *Alleyne* has no application to the sentencing enhancements at issue in this case. The parameters of *Alleyne* are limited to the imposition of mandatory minimum sentences, *i.e.*, where a legislature has prescribed a mandatory baseline sentence that a trial court must apply if certain conditions are met. The sentencing enhancements at issue impose no such floor. Rather, the enhancements only direct a sentencing court to consider a different range of **potential** minimum sentences, while preserving a trial court's discretion to fashion an individual sentence. By their very character, sentencing enhancements do not share the attributes of a mandatory minimum sentence that the Supreme Court held to be elements of the offense that must be submitted to a jury. The enhancements do not bind a trial court to any particular sentencing floor, nor do they compel a trial court in any given case to impose a sentence higher than the court believes is warranted. They require only that a court consider a higher range of possible minimum sentences. Even then, the trial court need not sentence within that range; the court must only consider it. Thus, even though the triggering facts must be found by the judge and not the jury—which is one of the elements of an *Apprendi*[6] or *Alleyne* analysis—the enhancements that the trial court applied in this case are not unconstitutional under *Alleyne*.

*Commonwealth v. Ali*, 112 A.3d 1210, 1226 (Pa.Super. 2015), *vacated and remanded on other grounds*, 149 A.3d 29 (Pa. 2016); *see also Valentine*, 101 A.3d at 813 (Gantman, P.J. concurring).

Accordingly, appellant's sentence is a legal sentence, and appellant's seventh issue is without merit.

Judgment of sentence affirmed.

---

[6] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

J. S07034/18

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/3/18